MILWAUKEE TRANSFORMER CO., INC., Appellant, v. INDUSTRIAL COMMISSION and another, Respondents.

*January 9—February 4, 1964.*

504

508

For the appellant there were briefs and oral argument by *Martin N. Sussman* of Milwaukee.

For the respondent Industrial Commission there was a brief and oral argument by *Arnold J. Spencer,* chief counsel of the unemployment compensation division.

WILKIE, J.   Three issues are raised on this appeal. They are:

1. Was Mrs. St. John's conduct "misconduct connected with . . . employment," within the meaning of sec. 108.04 (5), Stats.?

2. May the issue of whether Mrs. St. John's conduct was a voluntary termination of employment without good cause attributable to the employing unit or compelling personal reasons within the meaning of sec. 108.04 (7) (a), (b), and (c), Stats., be properly raised on this appeal, when the matter was not argued before the Industrial Commission or the circuit court and not passed upon by either body?

3. Assuming No. 2 is answered affirmatively, was Mrs. St. John's conduct a voluntary termination of employment within the meaning of sec. 108.04 (7) (a), (b), and (c), Stats.?

Issue No. 1.   *Was Mrs. St. John's conduct "misconduct connected with employment," within the meaning of sec. 108.04 (5), Stats.?*  To rule on whether Mrs. St. John's conduct was or was not "misconduct connected with [her] employment" within the meaning of sec. 108.04 (5), Stats., we must first define the extent of our review of the commission's determination that her conduct was not "misconduct" within the meaning of that statute.

The length of and reasons for Mrs. St. John's absence, the transactions between members of her family and company representatives, and the content of the company regulations and collective-agreement provisions, are findings of fact. It is well recognized that the court must accept the commis-

sion's determinations on such findings of fact if supported by credible evidence on the record as a whole.[3]

On the other hand, any determination that Mrs. St. John's conduct was "misconduct" within the standards set forth under sec. 108.04 (5), Stats., is a conclusion of law. As we recently said:

*"With respect to the second point of difference,* insofar as a person's acts, or his intent in doing such acts, are questions of fact, where the evidence and reasonable inferences therefrom would support any one of two or more findings, a finding by the commission is conclusive.

"Here, however, the question is whether the facts fulfil a particular legal standard. This court determined that the term 'misconduct connected with his employment' as used in sec. 108.04 (5), Stats., was an ambiguous term of doubtful meaning, and found it necessary to interpret it with the view of effecting the general purpose of the legislature.

"We consider that the difference between the appeal tribunal's evaluation of claimant's conduct and that of the commission is really a question of law, and the commission's determination does not bind us." [4]

If it is true that a determination by the commission that there has been misconduct under the standard prescribed by the statute is a conclusion of law, it does not follow that every such determination is open to an independent redetermination by this court. If several rules, or several applications of a rule are equally consistent with the purpose of the statute, the court will accept the agency's formulation and application of the standard.

---

[3] *Cooper's, Inc., v. Industrial Comm.* (1962), 15 Wis. (2d) 589, 113 N. W. (2d) 425; *Kohler Co. v. Industrial Comm.* (1956), 272 Wis. 310, 75 N. W. (2d) 293; *Marathon Electric Mfg. Corp. v. Industrial Comm.* (1955), 269 Wis. 394, 69 N. W. (2d) 573.

[4] *Cheese v. Industrial Comm.* (1963), 21 Wis. (2d) 8, 15, 123 N. W. (2d) 553. See also *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 257, 296 N. W. 636.

However, this court has the power in the first instance to determine whether the standard or policy choice used by the agency is consistent with the purpose of the statute. If upon consideration, we determine that a particular rule is consistent with legislative purpose, we must reject alternative rules regardless of whether they are "reasonable" or grounded in administrative expertise.

The general standard for determining whether an employee's course of conduct is misconduct is whether such behavior reflects an "intentional and substantial disregard of the employer's interests or the employee's duties." [5]

". . . mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." [6]

This standard must be interpreted and applied in the light of the basic social and economic objectives of unemployment compensation and the statutory mechanisms designed to achieve such objectives.[7]

The fundamental objectives of unemployment compensation are to mitigate economic loss to a worker and his family who is committed to the labor market, but is unable to find work because the economy has not provided enough jobs; to sustain general purchasing power by providing a built-in brake on a recession thus serving the interests of the economy at large.

When determining whether a worker's conduct is "misconduct" which will disqualify him from the benefits of the program, the employee's behavior must be considered as an

[5] *Cheese v. Industrial Comm., supra,* at page 17.
[6] *Boynton Cab Co. v. Neubeck, supra,* at page 260.
[7] See sec. 108.01 (1), Stats.

intentional and unreasonable interference with the employer's interest.

In considering whether a breach of company work rules or collective-agreement provisions is misconduct, the "reasonableness"[8] of the company rule must be assessed in light of the purpose of unemployment compensation rather than solely in terms of efficient industrial relations. We are less concerned with the "reasonableness" of the rule from the point of view of labor-management relations, than with the "unreasonableness" of the conduct of the employee in breach of the rule.[9] The unemployment compensation statute is not a "little" labor relations law. The critical question is whether Mrs. St. John's conduct was an intentional and unreasonable interference with her employer's interest, regardless of what construction was put on the rules or the reasonableness of those rules.

Therefore, it was unnecessary for either the commission or the court to construe the work rules and collective-agreement provisions in the fashion of an arbitrator or a court deciding a reinstatement case.[10] Assuming that the one-day rule required daily call-ins, the three-day rule required a call every three days, regardless of the duration of the absence, and the leave-of-absence provision was effective if the employee was to be absent for a "reasonably long duration," Mrs. St. John's conduct did not manifest such conscious disregard of her employer's interest as to constitute misconduct connected with employment.

The commission found that her absences prior to March 13, 1961, were caused by ill health. On each occasion she

[8] *Gregory v. Anderson* (1961), 14 Wis. (2d) 130, 109 N. W. (2d) 675.

[9] *Cheese v. Industrial Comm., supra.*

[10] *Widuk v. John Oster Mfg. Co.* (1962), 17 Wis. (2d) 367, 117 N. W. (2d) 245; breach of provision of collective agreement requiring notice after two-day absence held to be sufficient ground to bar *reinstatement.*

gave the company adequate notice on the day of her absence. Whether the company subjectively "accepted" her excuses or not is immaterial. She had good reason to be absent from work, and she gave adequate notice to enable her employer to adjust his production schedules accordingly.

Mrs. St. John's absence from March 13th until April 27th was a result of her acceptance of a physician's judgment that temporary termination of work was necessary for recovery from her injuries sustained in the automobile accident. She apprised her employer of the reason for her absence, a physician's recommendation, on five occasions within ten days after the accident. During the first week of absence she gave notice in literal compliance with the terms of the company work rules. Thereafter, based upon communications from company representatives to members of her family, especially the communication to her husband some eight days after her initial absence, to the effect that when she returned she should come to the office before returning to work, she could reasonably expect that the company was aware of the reason for her absence and had made the necessary production-scheduling adjustments. Whether the statements of the company personnel constituted a "waiver" of the notice requirements is immaterial. To qualify for compensation it is not necessary to find the employer at "fault," in any sense. The focus is upon the employee, and because Mrs. St. John did apprise the company of her absence on five occasions, giving it ample opportunity to adjust production schedules, and because her failure to continue giving notice throughout the duration of her absence was a reasonable response to admittedly ambiguous statements by company personnel, we cannot conclude that by her conduct she manifested an intentional and substantial disregard of her employer's interest. Her course of conduct was not "misconduct connected with employment."

Issue 2. *May the issue of whether Mrs. St. John's conduct was a voluntary termination of employment without good cause attributable to the employing unit or compelling personal reasons within the meaning of sec. 108.04 (7) (a), (b), and (c), Stats., be properly raised on this appeal, when the matter was not argued before the Industrial Commission or the circuit court and not passed upon by either body?* In the presentation of its case before the examiner, the commission, and the circuit court, the company persistently argued that Mrs. St. John's absences prior to March 13th and her absence after March 22d, without any notice, disqualified her for unemployment compensation benefits. To the company, this behavior came under the statutory category of misconduct. On this appeal the company now contends that the same facts could be viewed as a voluntary termination of employment under the terms of sec. 108.04 (7) (a), (b), and (c), Stats.[11]

At the time of the hearing before the appeal tribunal, the employer stated his reasons for opposing the claim and in this statement he made it clear that one of the company's grounds for objecting was "excessive absences" with or without notice. Because of these assertions, the company may properly raise the issue here of whether this course of

---

[11] "108.04 (7) *Voluntary termination of employment.* (a) If an employe terminates his employment with an employing unit, he shall be ineligible for any benefits based on such employment, and ineligible for benefits based on other previous employment for the week of termination and the 4 next following weeks, except as hereinafter provided.

"(b) Paragraph (a) shall not apply if the commission determines that the employe terminated his employment with good cause attributable to the employing unit.

"(c) Paragraph (a) shall not apply if the commission determines that the employe terminated his employment for compelling personal reason; provided that, if the commission determines that he is physically unable to work or substantially unavailable for work, he shall be ineligible while such inability or unavailability continues."

conduct constituted "voluntary termination of employment" under the statute (*supra*).

Issue 3. *Assuming No. 2 is answered affirmatively, was Mrs. St. John's conduct a voluntary termination of employment within the meaning of sec. 108.04 (7) (a), (b), and (c), Stats.?* On the merits, to sustain a finding of voluntary termination, we must find that the employee unilaterally severed the employment relationship without good cause attributable to the employer or to compelling personal reasons. We conclude that Mrs. St. John did not unilaterally sever the employment relationship. Her original termination of services, and the total duration of absence, came upon the advice of a physician that such action was necessary to aid her recovery from physical injury. Her continued notice to the company of the reason for the absence during the first week of unemployment is evidence of a desire to remain attached to the employment relationship. We cannot treat her failure to give notice after March 22d as a unilateral severance of the relationship because such failure to communicate further was a reasonable response to the ambiguous statements of company representatives, which could be viewed from her point of view as a statement that the company knew of her condition and had made adjustments accordingly. These factors indicate that Mrs. St. John was always ready to return to work when her physical condition permitted. The company unilaterally severed the employment relationship with the letter of April 27th.

*By the Court.*—Judgment affirmed.