NEFF, Respondent, v. INDUSTRIAL COMMISSION, Appellant.

*April 29—June 2, 1964.*

208

For the appellant Industrial Commission there was a brief by *Arnold J. Spencer,* chief counsel of the unemployment compensation division, and *Max J. Peltin,* attorney, and oral argument by *Mr. Spencer.*

For the respondent there was a brief by *Richard A. Hollern,* attorney, and *Beckwith & Hollern* of counsel, all of Madison, and oral argument by *Richard A. Hollern.*

BEILFUSS, J.  Broadly stated the issue is:

Is there credible evidence in the record to sustain the finding of the Industrial Commission?

Pertinent statutes and commission rules made pursuant to the statute are as follows:

"108.01 PUBLIC POLICY DECLARATION. Without intending that this section shall supersede, alter or modify the specific provisions hereinafter contained in this chapter, the public policy of this state is declared as follows:

" . . .

"(2) The economic burdens resulting from unemployment should not only be shared more fairly, but should also be decreased and prevented as far as possible. A sound system of unemployment reserves, contributions and benefits should induce and reward steady operations by each employer, since he is in a better position than any other agency to share in and to reduce the social costs of his own irregular employment. Employers and employes throughout the state should co-operate, in advisory committees under government supervision, to promote and encourage the steadiest possible employment. A more adequate system of free public employment offices should be provided, at the expense of employers, to place workers more efficiently and to shorten the periods between jobs. Education and retraining of workers during their unemployment should be encouraged. Governmental construction providing emergency relief through work and wages should be stimulated.

" . . ."

"108.02 (18) *Eligibility.* An employe shall be deemed 'eligible' for benefits for any given week of his unemployment unless he is disqualified by a specific provision of this chapter from receiving benefits for such week of unemployment, and shall be deemed 'ineligible' for any week to which such a disqualification applies."

"108.04 (2) *Registration for work.* (a) An employe shall be deemed eligible, for waiting period or benefit purposes, as to any given week for which he receives no wages, only if he has within such week registered for work in such manner as may then be prescribed by commission rules; provided that,

if the commission finds that there are conditions under which an employe cannot reasonably be required to comply with the foregoing registration requirement, the commission may by general rule waive this requirement under such stated conditions. Each employer shall inform his employes of the foregoing registration requirement, in such reasonable manner as the commission may from time to time prescribe."

"Ch. Ind-UC 126 REGISTRATION FOR WORK, AND NOTICE OF UNEMPLOYMENT. Sec. Ind-UC 126.01, 3 Wis. Adm. Code, *Manner of registering for work, and the effect of such registration.* (1) Pursuant to section 108.04 (2) (a), Wis. Stats., an employe shall be eligible, for waiting period or benefit purposes, as to any week or other designated period of his total unemployment, only if he has within such week or other designated period registered for work through a public employment office.

"(2) An employe thus registering for work shall be presumed willing and able to accept any suitable employment that might be offered him, except that a representative of the commission may test this presumption through questioning of the employe at the time he files his claim for benefits and through other procedures. A claimant will not be deemed as having registered for work if it is determined by any of these procedures that his physical condition or his personal circumstances remove or practically remove him from the labor market or that without good cause he is substantially restricting his opportunities to secure suitable employment."

"108.09 (7) (a) Either party may commence judicial action for the review of a decision of the commission hereunder, provided said party (after exhausting the remedies provided hereunder) has commenced such judicial action within 30 days after a decision of the commission was mailed to his last known address.

"(b) Any judicial review hereunder shall be confined to questions of law, and the other provisions of ch. 102 of the 1959 statutes with respect to judicial review of orders and awards shall likewise apply to any decision of the commission reviewed under this section. Any such judicial action may be defended, in behalf of the commission, by any qualified attorney who is a regular salaried employe of the commission

and has been designated by it for this purpose, or at the commission's request by the attorney general."

"108.04 (13) *Notification as to ineligibility.* (a) The commission may take administrative notice of any fact indicating an employe's ineligibility, whether or not the employing unit has reported such fact or asserted the employe's ineligibility under this chapter."

The parties agree that the law of this state is that in reviewing the findings of fact of the Industrial Commission under ch. 108, Stats. (unemployment compensation), the reviewing court is bound by such findings if there is any credible evidence which would support such findings.[1] Likewise if conflicting inferences exist it is for the commission to draw the controlling inference.[2] Further, the credibility of the witnesses and the weight of the evidence lie exclusively within the province of the commission.[3]

The claimant contends that the findings of the commission should be set aside because the evidence is insufficient to overcome the statutory presumption that claimant (employee) is deemed to be eligible, and upon the further ground that there is no credible evidence to support the finding of ineligibility.

Sec. 108.04 (2), Stats., as set forth above, and sec. 108.02 (18) provide in substance that an employee shall be "deemed eligible" for any week in which he received no wages (except waiting period) if he has registered for work in the manner prescribed by the commission.

The commission rules quoted above provide in substance that if the employee registers for work at a designated em-

[1] *Marathon Electric Mfg. Corp. v. Industrial Comm.* (1955), 269 Wis. 394, 402, 69 N. W. (2d) 573, 70 N. W. (2d) 576.

[2] *Cooper's, Inc., v. Industrial Comm.* (1962), 15 Wis. (2d) 589, 593, 113 N. W. (2d) 425.

[3] *Copland v. Department of Taxation* (1962), 16 Wis. (2d) 543, 555, 114 N. W. (2d) 858.

ployment office he shall be presumed willing and able to accept suitable work offered to him, but the commission may test the presumption by an investigation.

We hold the commission rule to be reasonable and valid. The statute and the rule create a presumption for the benefit of the employee. For the practical application of the statute and for the convenience of the employee, he is not required to prove his eligibility each week. When an investigation reveals facts inconsistent with eligibility the presumption disappears and he is not deemed to have made a valid registration. He, of course, may demand a hearing and a review for a factual determination. Such a hearing and review were held wherein it was determined that he was not eligible.

The circuit court upon judicial review was of the opinion that there was no evidence of sufficient probative value to refute the claimant's assertion that if a job was offered to him he would quit school to take the job, if quitting school was necessary, and that there was no evidence to sustain the conclusion that his personal circumstances removed or practically removed him from the labor market. The trial court stated in its memorandum opinion that the claimant's testimony was unequivocal on this point.

A review of the record as to this aspect reveals: That the claimant in his written request for a hearing and in his testimony did state, "I am willing to drop school and take steady work at a reasonable wage;" that he did not refuse employment, but none was offered; that he did make some attempt to secure employment. However, his testimony also reveals the following:

"*Q.* How often per week have you looked? *A.* It varies—usually once a week.

"*Q.* At least once a week? *A.* Yes.

"*Q.* Any special kind of work that you were looking for? *A.* No, I haven't.

"*Q.* For any kind? *A.* Yes, sir.

"*Q.* When you were looking for work, did you tell them you were attending college? *A.* No, I told them I just wanted a job.

"*Q.* If you got a full-time job, would you quit it to go back to school? *A.* I don't think I could say yes or no.

"*Q.* Can't say at this time? A. Uh-huh.

"*Q.* Did Mr. Reinerio of Reinerio Beverages contact you about work? *A.* No, I contacted him.

"*Q.* Did he offer you work? *A.* No.

"*Q.* He didn't have any? *A.* He said he was looking for a driver.

"*Q.* But what? *A.* Pardon.

"*Q.* He was looking for a driver but what—why didn't you get the job? *A.* He didn't give no reason. Somebody told him I was going to Northland.

"*Q.* You didn't tell him that? *A.* No.

"*Q.* And therefore he didn't want to hire you? *A.* No, he said, 'I'll let you know.'

"*Q.* He never contacted you again? *A.* No, sir.

"*Q.* Did you tell him that if you took the job that eventually you would quit to go to school? *A.* I told him that— My brother had worked on the truck with the previous owners and that he didn't get very good runs with them.

"*Q.* I mean did you tell him that you would eventually quit the job to go back to school? *A.* I told him that if it didn't prove satisfactory I probably would."

The major factual points at issue were under what circumstances he would quit school to accept employment and the extent and sincerity of his personal efforts to find work.

His testimony as to his willingness to quit school is a self-serving declaration of future intention. Under the circumstances the testimony was clearly admissible [4] but because it was self-serving and a declaration of future intention the commission was not bound to accept his testimony as a verity but was obligated to test his credibility and weigh his evidence together with other evidence to determine the fact. His testimony was an assertion of his mental state as to

---

[4] 2 Wigmore, Evidence (3d ed.), p. 714, sec. 581.

future acts. No testimony was available to refute or confirm it. From the testimony quoted the commission could determine that his demeanor and his response to pertinent and compelling questions was evasive and equivocal.[5]

In addition to this testimony the commission could consider his work history in the Milwaukee area, which is by far the largest labor market in Wisconsin; his removal from Milwaukee to Ashland, a surplus labor area and a seasonal labor area; his personal convenience in Ashland as contrasted to Milwaukee; educational opportunities available to him in Milwaukee together with probability of employment, and that the education he was pursuing (elementary education) was unrelated to the type of work he had been doing.

In weighing these evidentiary factors, coupled with the commission's assessment of his credibility, contrasted to his assertions that he would quit school to accept employment, we cannot conclude that the commission acted arbitrarily or capriciously, or in excess of its powers, or that its findings were based on its cultivated intuition, or that its findings are contrary to the undisputed credible evidence.

The findings of the commission that the personal circumstances of the claimant removed or practically removed him from the labor market and that he failed to register for work, beginning week 42, within the meaning of sec. 108.04 (2), Stats., and sec. Ind-UC 126 of the Wisconsin Administrative Code is supported by credible evidence. The order of the commission that the claimant is ineligible for unemployment benefits beginning in week 42 of 1961 and until he is avail-

[5] The case of *Richardson v. Industrial Comm.* (1957), 1 Wis. (2d) 393, 84 N. W. (2d) 98, relied upon by the claimant, must be distinguished on the facts in that Richardson's testimony was as to uncompleted past acts tested by attendant circumstances and not as to future intention. In *Richardson* the commission did not offer available verifying testimony and here no such testimony was available.

able for work on the general labor market should be reinstated.

*By the Court.*—Judgment reversed with directions to dismiss the complaint.

CURRIE, C. J. (*concurring*). The court's opinion holds that plaintiff Neff's testimony, of his willingness to drop out of Northland College and accept a full-time job if one were offered to him, was a self-serving declaration of future intention which the commission was not bound to accept as a verity. This facet of the case brings into focus an oft-repeated rule laid down by this court that positive uncontradicted testimony as to the existence of some fact, or the happening of some event, cannot be disregarded by a court or jury in the absence of something in the case that discredits the same or renders it unreasonable against probabilities. *Pagel v. Holewinski* (1960), 11 Wis. (2d) 634, 641, 106 N. W. (2d) 425; *State v. Public Service Comm.* (1962), 16 Wis. (2d) 231, 238, 114 N. W. (2d) 454; *Thiel v. Damrau* (1954), 268 Wis. 76, 85, 66 N. W. (2d) 747; *Schulz v. General Casualty Co.* (1939), 233 Wis. 118, 129, 288 N. W. 803; *Quass v. Milwaukee Gas Light Co.* (1919), 168 Wis. 575, 578, 170 N. W. 942; *Engmann v. Estate of Immel* (1884), 59 Wis. 249, 251, 252, 18 N. W. 182. See also *Johnson v. Aetna Life Ins. Co.* (1914), 158 Wis. 56, 61, 147 N. W. 32.

In the instant case this testimony by Neff as to his willingness to quit college, if a full-time job were offered him, is, in the writer's opinion, covered by the proviso of the rule that permits the finder of fact to disregard positive uncontradicted testimony when it is against reasonable probabilities. This type of situation is frequently presented in automobile accident cases where one driver is killed or suffers amnesia

and the only testimony given is by the other driver or by his guest passengers. For an example of this, see *Voigt v. Voigt* (1964), 22 Wis. (2d) 573, 126 N. W. (2d) 543. In this type of situation the trier of facts may disregard the testimony of interested parties or witnesses which is contradicted by a reasonable inference drawn from physical facts. *Pagel v. Holewinski, supra,* at page 641. Even where the physical facts are such as not to give rise to a reasonable inference which contradicts the testimony of the interested parties or witnesses, the trier of the facts should be permitted to disregard such uncontradicted testimony.

In my opinion, the rule in question should be modified with respect to uncontroverted testimony given by interested parties or witnesses as distinguished from disinterested witnesses. The rule is a proper one to invoke with respect to uncontroverted testimony of even an interested party or witness where the fact testified to is subject to corroboration or contradiction by other evidence. In such a situation it can be assumed that the party adversely affected by such testimony would have controverted it if untrue. However, where such uncontroverted testimony of an interested party or witness relates to a fact with respect to which it would be impossible to produce any other evidence of contravention, the trier of the fact should be permitted to reject such testimony if it concludes that it is false. The credibility of an interested party or witness in such a situation should be exclusively for the trier of fact.