FITZGERALD, Appellant, v. GLOBE-UNION, INC., and another, Respondents.

*May 9—June 6, 1967.*

334

336

For the appellant there was a brief and oral argument by *Harvey L. McCormick* of Milwaukee.

For the respondent Industrial Commission there was a brief by *Arnold J. Spencer,* chief counsel of the unemployment compensation department, and *Max J. Peltin* of Madison, attorney, and oral argument by *Mr. Spencer.*

BEILFUSS, J.   Two issues are presented:

(1) Could the industrial commission reasonably conclude that the employee's conduct constituted "misconduct" within the meaning of sec. 108.04 (5), Stats., so that the employee would be ineligible for unemployment compensation benefits accrued with respect to the discharging employer?

(2) Was the appellant afforded a fair hearing before the appeal tribunal?

The employee contends that the industrial commission cannot find her guilty of "misconduct" under sec. 108.04 (5), Stats., in the absence of a showing that she intentionally mislabeled the items which were wrongly stamped.

The scope of the court's review of determinations made by the industrial commission is a narrow one. The legislature has provided that findings of fact made by the industrial commission acting within its powers and in the

absence of fraud are conclusive on the courts. Secs. 102.-
23 (1) and 108.09 (7), Stats. When the question of fact
involves a person's acts or his intent in doing such acts,
and the credible evidence and the reasonable inferences
therefrom would support any one of two or more find-
ings, the finding of the industrial commission is conclu-
sive. *Liebmann Packing Co. v. Industrial Comm.* (1965),
27 Wis. (2d) 335, 339, 134 N. W. (2d) 458.

The determination of whether an employee's conduct is
"misconduct" under sec. 108.04 (5), Stats., is a question
of law, subject to the following qualification:

"If it is true that a determination by the commission
that there has been misconduct under the standard pre-
scribed by the statute is a conclusion of law, it does not
follow that every such determination is open to an in-
dependent redetermination by this court. If several rules,
or several applications of a rule are equally consistent
with the purpose of the statute, the court will accept the
agency's formulation and application of the standard."
*Milwaukee Transformer Co. v. Industrial Comm.* (1964),
22 Wis. (2d) 502, 510, 126 N. W. (2d) 6.

Thus if the commission's legal conclusion, such as a de-
termination of misconduct, is reasonable this court will
sustain the commission's view even though an alternative
view may be equally reasonable. *Tecumseh Products Co.
v. Wisconsin Employment Relations Board* (1964), 23
Wis. (2d) 118, 129, 126 N. W. (2d) 520.

With this standard of review in mind, we examine the
principal issue in the case at bar. The facts in this case
are not in dispute. The findings of fact made by the
appeal tribunal, and affirmed by the industrial commis-
sion, are supported by credible evidence and are conclu-
sive. The only question is whether the conduct of the
employee as found by the tribunals below could constitute
"misconduct" within the meaning of sec. 108.04 (5),
Stats.

The term "misconduct" for purposes of sec. 108.04 (5),
Stats., is not defined in the statutes. In the leading case,

*Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 296 N. W. 636, this court defined misconduct in light of the background and purposes of the Wisconsin Unemployment Compensation Act as follows, at page 259:

"The application of these principles leads to the conclusion, in view of the matters to be taken into consideration, as stated above, that the intended meaning of the term 'misconduct,' as used in sec. 108.04 (4) (a), Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

The *Boynton* test of misconduct has been approved by this court a number of times and remains vital to this day. *Cheese v. Industrial Comm.* (1963), 21 Wis. (2d) 8, 16, 17, 123 N. W. (2d) 553; *Milwaukee Transformer Co. v. Industrial Comm., supra,* page 511; *Liebmann Packing Co. v. Industrial Comm., supra,* page 339.

The record reveals that the employer had plant rules agreed to by the union as a bargaining agent for the employees. The rules were readily available to all employees. One of the rules related to "negligence or gross inefficiency on the job." The rule provided for a four-step procedure: (1) First warning; (2) final warning; (3) disciplinary layoff; (4) discharge.

An exhibit in the record indicates the employee was given her first warning for poor work in January, 1964 (no testimony was introduced regarding this incident.)

In September, 1964, a second notice was given because a lot of 25,000 items was poorly stamped. The entire lot of 25,000 had to be inspected by hand. About 2,500 were illegibly stamped and had to be sandblasted and then re-stamped. It was necessary to sandblast the stamps off the items because they were baked on. If an error is detected promptly it can be removed by a chemical solution which was readily available. The stamping machine is not a part of a constantly moving assembly line process. It is activated by the operator and can be stopped at will to check the stamp.

In January, 1965, the employee was given a third notice and a one week disciplinary layoff. On this occasion she incorrectly stamped 6,000 items although the correct stamp was clearly written on the master card. At a conference between the foreman, the union steward, and the employee she admitted she used the wrong stamp. All 6,000 items were scrap.

On March 23, 1965, she was given a fourth notice and discharged from her employment. She again admitted in a conference among the chief steward, the steward, the foreman, and herself that she used the wrong stamp and did not discover her error.

While the violation of a work rule may well justify the discharge of an employee, such a violation does not necessarily amount to misconduct for unemployment compensation purposes.[1] The misconduct must be within the definition set forth in *Boynton Cab Co. v. Neubeck, supra.*

In the definition set forth above it is stated: ". . . mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

The four incidents referred to were more than inefficiency and unsatisfactory conduct; the employee did have

[1] *Milwaukee Transformer Co. v. Industrial Comm., supra.*

the ability and capacity to do the work as demonstrated by almost three years of satisfactory performance; her negligence was not an isolated incident; she was not required to use judgment or discretion but merely to follow simple orders clearly given.

The trial court summarized its review as follows:

"In the instant situation we think there are a number of reasons why the Commission reached the correct legal conclusion in denying unemployment compensation benefits. Briefly summarized, they include the following: (1) The applicant here was not a novice on the job. She had worked at least 10 years for her employer, the last three and one-half years of which she operated the Marken stamping machine. For nearly two and one-half years she was able to operate this machine without difficulty and without committing gross errors. (2) We have here not one or two isolated instances of misconduct but four specific incidents occurring between January of 1964 and March of 1965. Such a recurrent pattern of conduct clearly removes this case from the doctrine announced in *Cheese vs. Industrial Comm.*, 21 Wis. 2d, 8, where the high court held that a *single incident* of inadvertently pouring water into the fuel tank of a crane, which caused extensive and serious damage, was not misconduct. (3) Here we have a situation where applicant's failure to follow specific instructions was the prime cause of her faulty work. In September of 1964 applicant failed to check to see that the stamp was imprinting properly on the surface to which it was being affixed. In December of 1964 and again in March of 1965 applicant simply used the wrong stamp and continued to use it on hundreds of pieces without even checking. In other words, the magnitude of her negligence was greatly magnified by her simple failure to check her own work as it progressed. This was in clear violation of her instructions and when it happened for the fourth time this, in our opinion, went beyond the bounds of ordinary inadvertent carelessness. (4) The record indicates that there was only one other instance of incorrect stamping by any other employee and in that case the worker involved almost immediately realized her error and corrected it without difficulty.

"Thus, on the basis of the entire record we must conclude that the employee here was guilty of gross ineffi-

ciency amounting to gross negligence which, under the law of Wisconsin, is tantamount to intentional or wilful misconduct. We have examined the list of cases supplied to us by counsel for the Commission from the Wisconsin U. C. Digest, 1960, and in our opinion the result reached by the Commission in the instant case is consistent with the history of the administration of the Act, which administrative construction should bear some weight with the reviewing court.

"Frankly, no authority has been cited to us where the conduct involved was so persistently recurrent over a relatively short period of time, i.e., three specific instances in six months and benefits have been allowed. As indicated, this case presents one of first impression on review but we must conclude that the legal conclusion arrived at was a correct one."

The trial court recognized the closeness of this case, but stated that it was reasonable for the commission to conclude:

". . . that the recurrent pattern of applicant's negligent acts were so serious so as to in the aggregate amount to gross negligence, thereby evincing an intentional and substantial disregard of the employer's interests."

The legal conclusion of the commission, as affirmed by the circuit court, is a reasonable interpretation [2] of misconduct as defined by *Boynton* and is therefore affirmed.

The employee contends that she received an unfair hearing which denied her due process of law under Amendment XIV of the United States constitution. The basis of this contention is that the hearing examiner allegedly displayed prejudice and bias in cutting off questioning by the employee's counsel, in instructing the employee's counsel to refrain from "quibbling" over evidentiary points, and in conducting his own extended cross-examination of one of the employer's witnesses. The record disclosed that the hearing examiner did appear

---

[2] *Milwaukee Transformer Co. v. Industrial Comm., supra.*

somewhat impatient and irritated when evidentiary questions were raised, did request the employee's attorney to refrain from quibbling over small evidentiary points, and did interject improper remarks.

In the recent case, *Tate v. Industrial Comm.* (1964), 23 Wis. (2d) 1, 126 N. W. (2d) 513, the court held that Tate was afforded a fair hearing even though (1) he was not represented by counsel, (2) the hearing examiner formed an opinion as to Tate's credibility before the end of the hearing in a case turning on credibility, and (3) the hearing examiner in his discretion decided not to adjourn the hearing on his own motion to allow Tate to procure a witness Tate said had promised an appearance in his behalf. In the instant case the circuit court determined that the employee received at least as fair a hearing as Tate did for two reasons:

"First, in the Tate case applicant was not represented by counsel in the hearing before the examiner. Here applicant was represented by very able counsel at the hearing and he went to some length to see that his client's rights were protected on the record. Secondly, in the Tate case credibility was one of the prime issues while here practically all the material facts are admitted, and both the Commission and the reviewing court were faced primarily with only an issue of law. Consequently we must conclude that the conduct of the hearing in the instant case had no material bearing on its ultimate result."

Although the hearing examiner did display impatience and irritation not becoming a quasi-judicial officer, the employee's counsel was not prevented from presenting any material evidence nor prevented from conducting material cross-examination. At the close of the hearing, the examiner stated: "The hearing is closed. My decision will be issued in writing, copies sent to both parties and the attorneys. And I thank both of you gentlemen for conducting such a good hearing." No bias or prejudice

on the part of the examiner appears and none of the rulings or remarks on the part of the examiner had any substantial effect upon or prejudice to the ultimate outcome of the employee's claim. The employee was not denied a fair hearing.

*By the Court.*—Judgment affirmed.