BAEZ, Respondent, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Appellants.

*No. 27. Argued October 28, 1968.—Decided November 26, 1968.*
(Also reported in 162 N. W. 2d 576.)

For the appellants there was a brief by *Arnold J. Spencer*, chief counsel of the unemployment compensation division of the Department of Industry, Labor & Human Relations, and by *Foley, Sammond & Lardner* and *Robert K. Drummond*, all of Milwaukee, for Albert Trostel & Sons Company, and oral argument by *Mr. Spencer* and *Mr. Drummond*.

For the respondent there was a brief by *Eisenberg, Kletzke & Eisenberg*, attorneys, and *Jerome F. Pogodzinski* of counsel, all of Milwaukee, and oral argument by *Mr. Pogodzinski*.

HEFFERNAN, J.

### Standard of review

The legislature has seen fit to deny unemployment compensation to an employee who has been discharged for misconduct. The pertinent statute provides:

"Sec. 108.04 (5) Discharge For Misconduct. An employe's eligibility, for benefits based on those credit weeks then accrued with respect to an employing unit, shall be barred for any week of unemployment completed after he has been discharged by the employing unit for misconduct connected with his employment . . . ."

The standard for reviewing the eligibility for unemployment compensation appears in sec. 108.09 (7) (b):

"Any judicial review hereunder shall be confined to questions of law, and the other provisions of ch. 102 of the 1959 statutes with respect to judicial review of orders and awards shall likewise apply to any decision of the commission reviewed under this section."

Chapter 102, Stats. (Workmen's Compensation) provides in part:

"102.23 Judicial review. (1) The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive . . . ."

In construing these statutes we have concluded that the findings of the department will be upheld if there is any credible evidence to support these findings. *Marathon Electric Mfg. Corp. v. Industrial Comm.* (1955), 269 Wis. 394, 402, 69 N. W. 2d 573, 70 N. W. 2d 576.

If conflicting inferences may be drawn from the evidence, it is the function of the department to conclude which inference (if reasonable) controls, and not the function of this court. *Fitzgerald v. Globe-Union, Inc.* (1967), 35 Wis. 2d 332, 337, 151 N. W. 2d 136.

In addition, the department, as the trier of the facts, is the sole judge of the credibility of witnesses. *Neff v. Industrial Comm.* (1964), 24 Wis. 2d 207, 213, 128 N. W. 2d 465.

These principles of judicial review are to be applied to the crucial findings of the department.

Baez contended that his refusal to work was justified for two reasons: (1) That there was a company policy which permitted an employee to refuse work in another

department when there was no work to be done at his regular job, and (2) that he was ordered to do the work of an elevator operator when he had no familiarity with the work and, in fact, had been ordered not to use the elevator.

In respect to the first issue raised by Baez, the department found:

"The employe further alleged that the established company policy gave him the option of going home if he did not wish to perform work other than his regular job. While the testimony in this repect was somewhat conflicting, it appears that such option may have been allowed only when there was to be no regular work available for any individual employe for the balance of any given day. In the instant case there was some work available for him on his regular job at the time of the additional assignment, and it also appears there would have been a full schedule of his regular work available for him later in his shift. Therefore, he did not establish that any company policy justified his refusal of the work in question."

In respect to the second issue, the department found:

"The employe alleged that the work he was requested to perform was as an elevator operator which he knew nothing about and that he had previously been instructed not to operate the elevator. However, this restriction had been placed on his use of the elevator for passenger purposes only and was in fact superseded in any event by the direct order of his supervisor. Furthermore, he was familiar with the operation of the elevator and the work he was requested to do involved only such use of the elevator as might be required in moving the assigned loads."

Our only function in respect to these findings is to determine whether there is any credible evidence to support the findings made by the department.

While the applicant initially attacks the finding in regard to company policy as no finding at all, it is apparent that the plain meaning of the statement is the finding

that only when there was no work to be done in the employee's regular job for the entire balance of the shift did the company policy permit an employee to refuse other work and go home if he so desired.

This finding is supported by the clearly credible evidence of Gerald L. Pangborn, the director of industrial relations for Trostel. He said that an employee was allowed the option of going home or of performing another job only if there was no work at all available in the department to which he was assigned and only if the company did not need him to perform other work that the employee was physically able to do. This testimony alone, even though contradicted by other testimony, is sufficient to support the commission's finding of company policy. Pangborn also explained that, if there would be work later in the shift, an employee was given the other work during the slack period. He stated that in such a situation the company never gave the option of going home.

The testimony of Tait, the foreman, clearly indicated that the company policy had no application to Baez's situation, for, at the time Baez was directed to do other work, it was apparent to Tait, and it was acknowledged by Baez, that the production process would create additional work in his regular assignment during the course of the shift. The evidence leaves no doubt that the slack time on the regular job would only have lasted about an hour and one half.

The commission was free to believe Pangborn and Tait and to disbelieve any contrary evidence. Under this state of the record, the findings of company policy and its inapplicability to Baez's situation are supported by credible evidence and must be sustained.

We also conclude that the finding that Baez knew how to operate the elevator, and that he was given orders to operate it that superseded any earlier directions to the contrary, is supported by the evidence.

Baez claimed that he was being assigned to a job as elevator operator and he did not know the duties of that job. He also claimed that he had been told not to use the elevator. A review of the testimony shows these contentions to be totally specious. There was testimony that Baez had frequently used the elevator and knew how to operate it. In fact, his contention that he was told not to operate it arose from the fact that he had in the past used it as a passenger elevator—when its use was limited to freight—and had left the gate open, making the elevator inoperable by other users. In any event, it was the finding of the department supported by the evidence that the earlier order not to use the elevator for forbidden purposes was superseded by the direction of the foreman to use the elevator to transfer leather between the floors.

### Was the employee's behavior "misconduct"

It is clear that the employee was given an order to perform work of a kind and nature that accorded with established company employment policy and that no policy or labor agreement precluded the direction to do such work.[1] It was a kind of work that the employee knew how to perform.

Was the refusal to do work under these conditions "misconduct"? This court has stated that for an employee's behavior to be misconduct it must be found to be an intentional and unreasonable interference with his employer's interest. *Milwaukee Transformer Co. v. Industrial Comm.* (1964), 22 Wis. 2d 502, 511, 512, 126 N. W. 2d 6; *Cheese v. Industrial Comm.* (1963), 21 Wis. 2d 8, 17, 123 N. W. 2d 553.

---

[1] Although respondent alleges a breach of a collective bargaining agreement, this is not argued on appeal, and a review of the collective bargaining agreement reveals no foundation for such argument. In this connection it should also be noted that the union is not a party to this proceeding.

We have said:

". . . 'misconduct,' as used in sec. 108.04 (4) (a), Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259, 260, 296 N. W. 636.

We have also said that whether the behavior is "misconduct" is a question of law, but:

". . . it does not follow that every such determination is open to an independent redetermination by this court. If several rules, or several applications of a rule are equally consistent with the purpose of the statute, the court will accept the agency's formulation and application of the standard." *Milwaukee Transformer Co. v. Industrial Comm., supra,* page 510.

In the same case, we said:

"When determining whether a worker's conduct is 'misconduct' which will disqualify him from the benefits of the program, the employee's behavior must be considered as an intentional and unreasonable interference with the employer's interest.

". . . The critical question is whether [the applicant's] conduct was an intentional and unreasonable interference with her employer's interest, regardless of what construction was put on the rules . . . ." *Milwaukee Transformer Co. v. Industrial Comm., supra,* pages 511, 512.

Pursuant to the rationale previously stated by this court, we find that the conduct of Baez interfered with the conduct of his employer's interest and that such conduct was unreasonable.

Baez did not contend that he was physically unable to perform the work, which might well be a reason for such a declination. Instead, he insists that he relied on a company policy that the department found did not exist. Moreover, his foreman testified that at no time did Baez question his transfer to other work on the basis of policy. Rather, the foreman testified that just prior to the discharge Baez, without giving any reason, elected to go home rather than to do the assigned work. At the hearing on cross-examination, Baez said he could not remember whether he had raised the question of company policy with the foreman.

His contention that he did not know how to operate the elevator and had been forbidden to operate it is without factual foundation. It is equally clear that, at the time he left work, he knew that later in the shift the leather processing would have reached the point that his usual and regular work of "jeeping" the work in process would have to be done. Yet, knowing this, he left his employment. The evidence shows that on that very shift the employer had to take an employee from another job to do the regular work that Baez was employed to do. Whatever misapprehensions Baez might have had in regard to company policy should have been dispelled on the foreman's second request that he do other work.

While there might be occasions when it might be reasonable and not misconduct for an employee to decline to do other than his usual and assigned work at the usual hours, it is apparent that the behavior here cannot be thus excused. His refusal to work under the circumstances was an unreasonable interference with the in-

terests of his employer. The findings of the department are based upon credible evidence of employee behavior amounting to misconduct. The findings of the department should be approved.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the findings of the Department of Industry, Labor & Human Relations, and to enter judgment thereon.