KANSAS CITY STAR COMPANY, Respondent, v. DEPART-
MENT OF INDUSTRY, LABOR & HUMAN RELATIONS and
others, Appellants.*

*No. 259. Argued September 5, 1973.—Decided October 30, 1973.*
(Also reported in 211 N. W. 2d 488.)

---

* Motion for rehearing pending. This motion was not decided
at the time the volume went to press. Its disposition will be re-
ported in Volume 61 2d.

598

For the appellants there was a brief by *Uclair W. Brandt,* Department of Industry, Labor & Human Relations chief counsel, attorney; and *Goldberg, Previant & Uelmen* and *Albert J. Goldberg* of counsel, attorneys for William A. Abel, et al., of Milwaukee; and oral argument by *Albert J. Goldberg.*

For the respondent there was a brief by *Carroll E. Metzner, Roger L. Gierhart,* and *Aberg, Bell, Blake & Metzner,* all of Madison, and *Allan L. Bioff, Leonard Singer,* and *Watson, Ess, Marshall & Enggas,* all of Kansas City, Missouri, and oral argument by *Carroll E. Metzner* and *Mr. Bioff.*

A brief amicus curiae was filed by *Davis, Kuelthau, Vergeront, Stover & Leichtfuss, S. C.,* attorneys, and *Walter S. Davis* and *John P. Savage* of counsel, all of Milwaukee, for Wisconsin Manufacturers' Association.

WILKIE, J. The two issues that are dispositive of this appeal are:

1. What is the meaning of a bona fide labor dispute as set forth in sec. 108.04 (10), Stats.?

2. Does the evidence support the findings by the department that the employees did not lose their employment because of a bona fide labor dispute in active progress in the establishment in which they were employed?

### *Meaning of bona fide labor dispute.*

A "labor dispute" within the meaning of sec. 108.04 (10), Stats., is " 'any controversy concerning . . . employment relations, or any other controversy arising out of the respective interests of employer and employee . . . .' " [1]

The term "bona fide" is not specifically defined in ch. 108, Stats., and therefore it must be "interpreted in accordance with the common and approved usage thereof and in accordance with other accepted rules of statutory construction." [2] The term generally " 'signifies a thing done really, with a good faith, without fraud or deceit, or collusion . . .' . . . Bona fide means real, actual, genuine . . . ." [3]

The term "bona fide labor dispute," within the disqualifying sec. 108.04 (10), Stats., means a controversy regarding the terms of employment which in fact exists and is not merely pretextural or feigned on the part of the employer in an attempt to avoid his obligations under the law.

One of the purposes of the Unemployment Compensation Act was to "prevent an employer from financing a strike against himself." [4]

---

[1] *Spielman v. Industrial Comm.* (1940), 236 Wis. 240, 250, 295 N. W. 1; *Kenneth F. Sullivan Co. v. Industrial Comm.* (1964), 25 Wis. 2d 84, 88, 130 N. W. 2d 194; *accord,* Annot. (1953), 28 A. L. R. 2d 287, 297.

[2] Sec. 108.02 (21), Stats.

[3] *Bridgeport Mortgage & Realty Corp. v. Whitlock* (1941), 128 Conn. 57, 61, 20 Atl. 2d 414.

[4] *Kenneth F. Sullivan Co. v. Industrial Comm., supra,* footnote 1, at page 88.

*Department's finding of fact—no bona fide
labor dispute.*

A benefit claimant is presumed eligible for benefits and
the party (the employer here) resisting payment of
benefits has the burden of proving that the case comes
within the disqualifying provision of the law (here, a
bona fide labor dispute existed).[5]

In reviewing the department's finding that the un-
employment of the employees was not because of a bona
fide labor dispute in active progress our standard of
review is of course that we must accept the department's
determinations on such findings of fact if supported by
credible evidence on the record as a whole.[6] The credi-
bility of the witnesses and the weight of the evidence
is within the province of the department.[7] In *R. T. Mad-
den, Inc. v. ILHR Department,*[8] this court extensively
reviewed the tests which had been used to explain the
proper scope of review and held:

"It is our conclusion the test should be whether there
is any credible evidence in the record sufficient to sup-
port the finding made by the department. The assump-
tion in that test is, of course, that the evidence is relevant,
that it is evidentiary in nature and not a conclusion of
law, and that it is not so completely discredited by other
evidence that a court could find it incredible as a matter
of law. This is clearly not the same as a reviewing
court's weighing conflicting credible evidence to deter-
mine what shall be believed."

Moreover, "[i]f conflicting inferences may be drawn
from the evidence, it is the function of the department

[5] *Boynton Cab Co. v. Giese* (1941), 237 Wis. 237, 296 N. W. 630.

[6] *Milwaukee Transformer Co. v. Industrial Comm.* (1964), 22
Wis. 2d 502, 509, 510, 126 N. W. 2d 6.

[7] *Neff v. Industrial Comm.* (1964), 24 Wis. 2d 207, 213, 128 N.
W. 2d 465; *Copland v. Department of Taxation* (1962), 16 Wis. 2d
543, 555, 114 N. W. 2d 858.

[8] (1969), 43 Wis. 2d 528, 547, 169 N. W. 2d 73.

to conclude which inference (if reasonable) controls, and not the function of this court." [9] In *Kessler v. Industrial Comm.* [10] this court explained:

"[W]here the evidentiary facts are not in dispute but permit of different inferences the drawing of one of such inferences is a finding of fact within the province of the Industrial Commission. *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 56 N. W. 2d 525. This court has held, however, . . . that if the evidentiary facts are not in dispute and permit of only one reasonable inference, the drawing of that inference is a question of law and not of fact. . . ."

The department made lengthy findings, which we have already quoted, amplifying its determination that "The commission does not consider that the employees lost their employment with the employer because of a bona fide labor dispute within the intent and meaning of section 108.04 (10)."

Although there is a dispute on the record as to whether or not the employer was given notice that there would be no renewal of the termination notice while the price and wage freeze was in effect, there was clearly evidence that the employer was given oral assurance of this. This is a factual determination which is within the department's responsibility to make.

The department, having decided that the termination notice had been withdrawn, could have determined as a matter of fact that the layoffs were not while a bona fide labor dispute was in progress but were by way of a layoff for economic reasons.

In concluding that the loss of employment in this case was not due to a bona fide labor dispute, the department

[9] *Baez v. ILHR Department* (1968), 40 Wis. 2d 581, 585, 162 N. W. 2d 576; *Fitzgerald v. Globe-Union, Inc.* (1967), 35 Wis. 2d 332, 337, 151 N. W. 2d 136.

[10] (1965), 27 Wis. 2d 398, 400, 134 N. W. 2d 412.

relied heavily on *Barrett v. Wasson Coal Co.*[11] In *Barrett*, an Illinois coal mine was closed down pending negotiations of a new contract and the employer tried to defeat the employees' claim of unemployment benefits by asserting sec. 7(d) of the Illinois Unemployment Compensation Act (Ill. Rev. Stat. 1947, ch. 48, par. 223). This was a labor dispute exception similar to sec. 108.04(10), Stats. The owner of the mine claimed he refused to sign the labor contract because he did not understand its terms. However, during negotiations, the owner explained, " 'I can't operate until the government lets me know for sure what I am going to get for the coal.' "[12] The division of unemployment compensation found, and the Supreme Court of Illinois agreed, that ". . . there was no labor dispute . . . . There was no dispute concerning hours or terms of employment about which the parties were trying to agree."[13] The loss of employment in that case was not because of a labor dispute but because the government's policy on coal had not been clearly established, a circumstance beyond the control of both parties. In the present case, the immediate cause of the lack of jobs was the rapid decline in orders for paper and the general winding down of operations by the employer. Customers and suppliers were notified and operations were wound down. With the attendant decrease in orders and general business at the paper mill, soon there was no work to be done. The plant was shut down. Although there is no evidence here which indicates the employer had an independent reason, such as the governmental policy regarding coal in *Barrett*, for closing its paper mill, from the record as a whole the department could find that a bona fide labor dispute did not exist at the time of the layoff and

[11] (1949), 404 Ill. 11, 87 N. E. 2d 769.
[12] *Id.* at page 14.
[13] *Id.* at pages 16, 17.

the layoffs were for business reasons, the reasons being the kind designed to give rise to legitimate unemployment compensation claims within the framework of the Wisconsin Unemployment Compensation Law.

*By the Court.*—Judgment reversed.

ROBERT W. HANSEN *(concurring).* When their former employer closed down the paper plant in which they had been working, the former employees applied for unemployment compensation benefits for the weeks of joblessness that followed the permanent closing of their former place of employment. Even if a labor dispute was involved in the management decision to close the plant down, the former employees are entitled to unemployment compensation benefits under sec. 108.04 (10), Stats., except ". . . for any week in which such . . . bona fide labor dispute *is in active progress* in the establishment . . ." in which they were employed. (Emphasis supplied.) With the plant permanently closed, there was no labor dispute left, much less one in active progress. There was no employer or employees to do the disputing. There was only a former employer and its former employees. There were no wages, hours or working conditions about which to dispute. Payroll and positions ended when the plant closed down. Whatever its reasons for so doing, when management permanently closed down the paper plant, any disagreement with its former employees was interred along with the plant operations. The state agency holding that the former employees are entitled to unemployment compensation benefits is upheld solely for the reason that a permanently closed mill or factory cannot have a labor dispute in active progress any more than a corpse can have a toothache.

I am authorized to state that Mr. Justice BRUCE F. BEILFUSS and Mr. Justice CONNOR T. HANSEN join in this concurring opinion.