Barbara S. BARNETT, Plaintiff-Respondent,

v.

# LABOR & INDUSTRY REVIEW COMMISSION
and Appleton Area School District, Defendant-Appellants.

Court of Appeals

*No. 85–1011. Submitted on briefs January 27, 1986.—
Decided April 8, 1986.*
(Also reported in 388 N.W.2d 652.)

For the appellant Labor and Industry Review Commission there were briefs by *William W. Cassel.*

For the respondent there was a brief by *Ellen J. Henningsen* of Madison and *Bruce Meredith,* staff counsel, Wisconsin Education Association Council.

Before Cane, P.J., Dean and LaRocque, JJ.

LaROCQUE, J.   The Labor and Industry Review Commission appeals a judgment reversing its determination that Barbara Barnett was ineligible for unemployment compensation benefits. The issue is whether the Appleton School District was Barnett's "current employing unit" within the meaning of sec. 108.04(1)(a), Stats. Because Barnett's employment relationship with the district had been severed upon her indefinite layoff and was not resurrected by her acceptance of oc-

casional substitute teaching assignments, we affirm the judgment.

The facts are not in dispute. Barnett was employed as a full-time teacher by the Appleton Area School District during the 1982–83 school year. At the end of the school year, the district laid her off indefinitely. Thereafter, she received unemployment benefits. On its own initiative, however, the district placed Barnett's name on its substitute teacher's list. Barnett did not enter into any kind of formal agreement with the district nor was she informed how often she might be called to substitute. Between August 31 and October 26, 1983, Barnett accepted four substitute teaching assignments, totaling eighteen days, and the district paid her $40 at the end of each school day she taught.

During this period, Barnett also passed the Wisconsin real estate broker's test and began working, on a commission basis, for a local real estate firm. On November 3, the district offered Barnett a substitute position for the day. Barnett refused the offer because she was required to attend a real estate training session. On November 10, the district again offered Barnett a job for the day, and she again refused because of previously scheduled real estate commitments.[1]

Barnett applied for unemployment benefits for the two weeks in question, and the district opposed them. After a hearing, DILHR determined that under sec. 108.04(1)(a), she was ineligible for benefits. The circuit court reversed, concluding that Barnett was not unavailable for work because she was in fact working on the days in question as a realtor.

---

[1] Neither the district nor the commission argue that Barnett was ineligible under § 108.04(8)(a), Stats., which provides that, absent good cause, a claimant must accept work when offered.

■

It is well established that a layoff for an indefinite period severs an employment relationship for benefit purposes. *A.O. Smith Corp. v. DILHR*, 88 Wis. 2d 262, 269–70, 276 N.W.2d 279, 283 (1979). Thus, contrary to the commission's claim, the district's placement of Barnett on indefinite layoff in May, 1983, severed their employment relationship and ended the district's status as Barnett's current employing unit. Barnett was eligible for, and did receive, benefits throughout the summer and fall. She was also presumed to be eligible for the weeks in question, and the district bears the burden of demonstrating that Barnett's acceptance of substitute teaching assignments nullifies her eligibility. *See Kansas City Star Co. v. DILHR*, 60 Wis. 2d 591, 602, 211 N.W.2d 488, 493 (1973). To satisfy this burden, the commission must demonstrate that the district was Barnett's current employing unit for the weeks in question. The commission fails to meet that burden.

■

The dispositive issue involves the interpretation of "current employing unit" found in sec. 108.04(1)(a), which provides in part:

> An employee shall be ineligible for benefits for any week in which he is with due notice called on by his *current employing unit* to report for work . . . and is unavailable. . . ." [Emphasis added.]

The commission contends that current employing unit should be interpreted to include school districts that utilize substitute teachers on an unscheduled, noncontractual basis. Although we will give weight to the interpretation of a statute by the agency charged with its application, we are not bound by that interpreta-

tion. *Leissring v. DILHR,* 115 Wis. 2d 475, 481, 340 N.W.2d 533, 536 (1983). We have the power in the first instance to determine whether the standard or policy choice used by the agency comports with the statutory purpose. *Id.* at 483, 340 N.W.2d at 536.

■

In construing a statute, the primary objective is to achieve a reasonable construction that will effectuate the statutory purpose. *State ex rel. Melentowich v. Klink,* 108 Wis. 2d 374, 380, 321 N.W.2d 272, 275 (1982). In an earlier decision, this court held that "employing unit" as used in ch. 108, Stats., is ambiguous. *Ellingson v. DILHR,* 95 Wis. 2d 710, 714, 291 N.W.2d 649, 651 (Ct. App. 1980). We concluded that employing unit, as used in sec. 108.04(7)(a), Stats., refers to "any employment, including parttime employment." *Ellingson,* 95 Wis. 2d at 714, 291 N.W.2d at 651. "Employment" is defined as "any service . . . performed by an individual for pay." Section 108.02(15)(a), Stats.

Although *Ellingson* involved the application of part-time employment to the term "employing unit," that case is factually distinct from Barnett's situation. Ellingson was employed as a part-time security guard two days a week for ten months until he voluntarily terminated the relationship and became ineligible for benefits under sec. 108.04(7)(a). The continuous and regular nature of Ellingson's work up to the time of his resignation does not appear to have been questioned.

Barnett, on the other hand, had no more than a sporadic, unpredictable, unilaterally controlled relationship. She did not have a contract with the district, she was paid on a per-day basis at the end of the day that she substituted, received no fringe benefits, and had no reasonable assurance of continuous work. Bar-

nett's "opportunity for steady and economically viable employment . . . was speculative at best." *Leissring,* 115 Wis. 2d at 493, 340 N.W.2d at 541.

■

The requirement of some ongoing relationship is emphasized by the modification of "employing unit" with the word "current" in sec. 108.04(1)(a). When interpreting statutes, the nontechnical words used in a statute are to be given their ordinary and accepted meaning, and that meaning may be ascertained from a recognized dictionary. *See Kollasch v. Adamany,* 104 Wis. 2d 552, 563, 313 N.W.2d 47, 53 (1976). Generally, in the absence of an applicable statutory definition, it is the common usage of nontechnical words and phrases that is intended by the legislature. *DOR v. Trudell Trailer,* 104 Wis. 2d 39, 42, 310 N.W.2d 612, 614 (1981). Webster's Third International Dictionary 557 (1976) defines "current" as "occurring in or belonging to the present time: in evidence . . . at the time actually elapsing. . . ."

■

We conclude that "current employing unit" refers to presently occurring full or part-time service performed for pay, not past nor speculative future employment. The district was Barnett's current employing unit only on the days she actually substitute taught. Her employment with the district ended when the school bell rang because other than those days, she had no nexus nor obligations to the district. Her association with the district was not "in evidence . . . at the time actually elapsing." Barnett was therefore eligible for unemployment benefits.

*By the Court.*—Judgment affirmed.