Wisconsin DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Unemployment Compensation Division, Plaintiff-Appellant,

v.

Wisconsin LABOR & INDUSTRY REVIEW COMMISSION, Sally B. Emerson and La Crosse Public School, Defendants-Respondents. [Case No. 89-1691.]

Wisconsin DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Unemployment Compensation Division, Plaintiff-Appellant,

v.

Wisconsin LABOR & INDUSTRY REVIEW COMMISSION, Kathryn A. Schnitzius and La Crosse Public School, Defendants-Respondents. [Case No. 89-1852.]

Supreme Court

*Nos. 89-1691, 89-1852. Argued November 27, 1990.—Decided April 10, 1991.*

(Also reported in 467 N.W.2d 545.)

234

For the plaintiff-appellant there were briefs (in the court of appeals) by *Gregory A. Frigo, Mary Lynn Endter, Judy M. Rogers* and *Department of Industry, Labor and Human Relations,* Madison and oral argument by *Glenn E. Kelley.*

For the defendant-respondent, Labor and Industry Review Commission, there was a brief (in the court of appeals) and oral argument by *Earl G. Buehler,* Madison.

For the defendants-respondents, Sally B. Emerson & Kathryn A. Schnitzius there was a brief (in the court of appeals) by *Bruce Meredith, Valerie Gabriel,* and *Wisconsin Education Association Council,* Madison and oral argument by *Mr. Meredith.*

WILLIAM J. BABLITCH, J. These cases were consolidated by the court of appeals and are before the court on certification from the court of appeals pursuant to sec. 809.61, Stats. In each case the Department of Industry, Labor and Human Relations (Department) is appealing a judgment of a circuit court for La Crosse county which affirmed a decision of the Labor and Industry Review Commission (Commission) awarding unemployment compensation (UC) benefits to a La Crosse Public School's teacher for weeks 24 through 35 (summer) of 1988. The Commission concluded that the teachers, who worked the entire 1987–88 academic year in an instructional capacity, were eligible for UC benefits because they did not have a reasonable assurance of per-

forming such services in the same capacity for the successive academic year when they were only offered guaranteed teaching positions for the first semester of the 1988–89 academic year. The Department challenges the Commission's legal findings and asserts that the reviewing courts of this state should accord deference to its decisions rather than the Commission's when the agencies disagree on the interpretation of the UC statutes. We hold that where deference to an agency's decision is appropriate, the courts of this state should continue to accord deference to the Commission's findings because the legislature intended the Commission to have final review authority over disputed Department decisions. We further conclude that deference to the Commission's decision is appropriate in this case and that the Commission's interpretation of the applicable UC statute is reasonable. Therefore, the decisions of the circuit courts awarding UC benefits to the employes are affirmed.

The facts in these cases are not in dispute. Sally Emerson was employed as a home economics teacher by the La Crosse Public Schools during the 1987–88 academic year. Under the terms of her contract, she worked 83 percent of full-time at a salary of $19,215. After being laid off at the end of the academic year which ended June 6, 1988, Emerson was offered a position as a long term substitute for the fall semester of the 1988–89 academic year. Emerson accepted this position and was to be paid $8,893.00.

Kathryn Schnitzius was employed as a teacher of the hearing impaired by the La Crosse Public Schools for the 1987–88 academic year. Under the terms of her contract, she worked 60 percent of full-time at a salary of $15,162.00. After being laid off at the end of the academic year which ended June 6, 1988, Schnitzius was offered a position as a long term substitute for the fall

semester of the 1988–89 academic year. She accepted that position and was to be paid $8,910.00.

Emerson and Schnitzius separately applied for unemployment compensation benefits for UC weeks 24 through 35 of 1988. The parties agree that the eligibility for benefits of both employes is primarily governed by sec. 108.04(17)(a), Stats., which provides:

> An employe of an educational institution or an employe of a government unit or nonprofit organization who provides services to or on behalf of an educational institution and who performs services in an instructional, research or principal administrative capacity is ineligible for benefits based on such services for any week of unemployment which occurs during a period between 2 successive academic years or 2 regular terms, whether or not successive, if such employe performed such services in the first such academic year or term and if there is a contract or a reasonable assurance that such employe will perform such services in the 2nd such academic year or term.

On June 17, 1988, the Department determined that the employes were ineligible for UC benefits under sec. 108.04(17)(a), Stats., because the employes had worked in an instructional capacity before summer vacation and they had a reasonable assurance that they would perform such services in the next academic year or term. Emerson and Schnitzius appealed those determinations on June 20, 1988.

Pursuant to sec. 108.09(3), Stats., Emerson and Schnitzius each had a hearing before an appeal tribunal of the Department on July 20, 1988. The appeal tribunal found that the employes had a reasonable assurance of performing services in an instructional capacity in the fall 1988 term and affirmed the Department's initial determination to deny the employes UC benefits for the

weeks between the 1987–88 academic year and the fall 1988 term.

On July 29, 1988, Emerson and Schnitzius petitioned for Commission review of the Department's decision pursuant to sec. 108.09(6), Stats. On November 25, 1988, the Commission issued its finding that the employes performed services in an instructional capacity for the employer in the 1987–88 academic year and that they did not have a reasonable assurance of performing such services in the 1988–89 academic year. The Commission found that the word "term," as used in sec. 108.04(17)(a) was intended to cover lapses in annual employment which occur at different times under different academic systems, other than the break between standard academic years under the conventional two-semester system. It emphasized that the use of "term" in the statute was not intended to provide an optional method of addressing the question of reasonable assurance between two academic years. Therefore, it concluded that academic years should be compared in this case. The Commission's reversal of the appeal tribunal's decision made the employes eligible for UC benefits during the weeks between the academic years.

The Department commenced separate actions for judicial review of the Commission's decisions pursuant to the provisions of secs. 108.09(7) and 102.23, Stats. On July 27, 1989, Circuit Judge Dennis G. Montabon filed a Memorandum Decision and Order which affirmed the decision of the Commission awarding UC benefits to Emerson. On August 16, 1989, Circuit Judge Michael J. Mulroy filed a Memorandum Decision and Order which affirmed the Commission's decision awarding UC benefits to Schnitzius. In each case the circuit court accorded deference to the Commission's decision.

The Department appealed the decisions of both circuit courts and filed a motion to consolidate the cases. The court of appeals granted that motion on October 16, 1989. The court of appeals certified both cases and we accepted the certification.

## I.

This case presents the novel situation in which two agencies, each with responsibility and experience in interpreting and applying a statute, contend that its decisions interpreting the statute should be given deference by the reviewing courts of this state. Therefore, the first issue we must address is whether this court should review the decision of the Department or the decision of the Commission. Because the legislature intended to give final review authority of Department decision's to the Commission, we hold that it is the findings and conclusions of the Commission that must be reviewed by the courts of this state, rather than those of the Department. We also find that deference to the Commission's decision is appropriate in this case.

Both agencies have experience, technical competence, and specialized knowledge in interpreting and applying the UC statutes. The circuit court gave deference to the Commission's decision. The Department contends that this court should give deference to its legal conclusions and not the Commission's because the Department is the agency with primary responsibility for the administration of Unemployment Compensation law.

As the Department acknowledges, the decisions of the Commission have historically been given deference by the reviewing courts of this state. *See, e.g., Ace*

241

*Refrigeration & H. Co. v. Industrial Comm.,* 32 Wis. 2d 311, 315, 145 N.W.2d 777 (1966); *Indianhead Truck Lines v. Industrial Comm.,* 17 Wis. 2d 562, 567, 117 N.W.2d 679 (1962); *Fitzgerald v. Globe-Union, Inc.,* 35 Wis. 2d 332, 337, 151 N.W.2d 136 (1967); *Goranson v. ILHR Department,* 94 Wis. 2d 537, 545, 289 N.W.2d 270 (1980); *Farmers Mill of Athens, Inc. v. ILHR, Dept.,* 97 Wis. 2d 576, 580, 294 N.W.2d 39 (Ct. App. 1980). We have emphasized that it is the factual and legal findings of the Commission that are scrutinized by the appellate court and not those of the appeal tribunal. *See, e.g., Ace Refrigeration & H. Co.,* 32 Wis. 2d at 315; *Indianhead Truck Lines,* 17 Wis. 2d at 567. " 'The ultimate responsibility for findings is upon the commission itself.' " *Ace Refrigeration & H. Co.,* 32 Wis. 2d at 315 (quoting *Indianhead Truck Lines,* 17 Wis. 2d at 567).

Nevertheless, the Department urges us to "take a fresh look at the issue of deference to agency expertise," by reexamining our practice of giving deference to the findings of the Commission in view of the reorganization of the Department in 1977. The Department asserts that prior to 1977, the Commission, as head of the Department, had primary responsibility for administering UC law and, therefore, deference to the Commission was appropriate. In 1977, the Commission was removed from the Department and created as a separate agency to review cases issued by the Department's appeal tribunals in the areas of unemployment compensation, worker's compensation and equal rights. *See* ch. 29, Laws of 1977. The Department asserts that, as a review agency, the Commission no longer has primary responsibility for administration of UC law and is less competent than the Department to decide UC issues.

The Department relies on language in *West Bend Ed. Ass'n. v. WERC,* 121 Wis. 2d. 1, 357 N.W.2d 534 (1984), to argue that deference should be accorded to the Department's decision rather than the Commission's decision because the Department is the primary agency administering unemployment compensation law. In *West Bend Education Ass'n.,* 121 Wis. 2d at 12, we said:

> Where a legal question is intertwined with factual determinations or with value or policy determinations or where the agency's interpretation and application of the law is of long standing, *a court should defer to the agency which has primary responsibility for determination of fact and policy* (emphasis added) (footnote omitted).

Similarly, in *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 82–83, 452 N.W.2d 368 (1990), we stated that the general rule is that " 'the construction and interpretation of a statute adopted by the administrative agency charged by the legislature with *the duty of applying it* is entitled to great weight.' " (quoting *Beloit Education Assoc. v. WERC,* 73 Wis. 2d 43, 67, 242 N.W.2d 231 (1976)) (emphasis added).

The Department argues that it is the agency with primary responsibility for the determination of fact and policy and the agency charged with the duty of applying the unemployment compensation statutes. The Department emphasizes that it interprets and applies UC law in every instance, while the Commission only interprets UC law in cases of appeal. The Department also stresses that sec. 108.14(1), Stats., expressly provides that "[t]his chapter [covering UC] shall be administered by the department." In addition, the Department emphasizes its significant role in developing UC policy. Section

108.14(2) gives the Department authority to promulgate substantive rules affecting the UC statutes and sec. 108.14(5) requires the UC Advisory Council to keep the legislature abreast of the Department's recommendations and views regarding UC law.

We do not find the Department's argument persuasive.

The statutes do not support the Department's suggestion that the legislature intended to alter the historical role of the Commission as the ultimate finder of fact and law reviewed by the courts when it created the Commission as a separate agency in 1977. Section 108.09(7)(a), Stats., states that "[t]he department or either party may commence action for the judicial review of *a decision of the commission . . .*." (Emphasis added.) Furthermore, sec. 108.09(6)(d), which provides that "the commission may affirm, reverse, modify or set aside the decision [of the appeal tribunal] on the basis of the evidence previously submitted . . ." does not require any deference by the Commission to the conclusions of fact or law of the Department. *See La Crosse Footwear v. LIRC,* 147 Wis. 2d 419, 434 N.W.2d 392 (Ct. App. 1988).

The Department's reliance on *West Bend Education Ass'n.,* 121 Wis. 2d 1, is misplaced. Neither *West Bend Education Ass'n.* or *Local No. 695,* 154 Wis. 2d 75 contemplated a situation in which there were two administrative agencies with expertise. *West Bend* and *Local No. 695* merely state one situation in which deference should generally be accorded to an administrative agency. It is clear that it is this court's practice and the legislature's desire that the Commission have ultimate responsibility for making the findings of fact and law that will be reviewed on appeal by the courts of this state.

Although the Department administers the UC program on a day-to-day basis, the Commission was created to have final review authority of Department interpretations. Granting deference to the Department's findings would undermine the reviewing authority of the Commission and result in increased judicial review without achieving any material corresponding benefits. The Commission provides an opportunity for the correction of errors and helps to assure consistent statutory application.

■

Based on the above, we hold that the reviewing courts of this state should accord deference to the findings of the Commission, rather than those of the Department, where deference to an agency's decision is appropriate.

## II.

The second issue we address is whether the Commission erred in interpreting sec. 108.04(17)(a), Stats. Because deference to the Commission's decision is appropriate in this case, we will affirm the Commission's interpretation of the statute if it is reasonable, even if another conclusion would be equally reasonable. The Commission interpreted sec. 108.04(17)(a), to require a comparison of employment for the 1987–88 and 1988–89 academic years, rather than the 1987–88 spring term and the 1988–89 fall term. We conclude that this is a reasonable interpretation of the statute and that under this interpretation the employes had no reasonable assurance of employment for the 1988–89 academic year.

■

The Department challenges the Commission's interpretation of sec. 108.04(17)(a), Stats. The interpretation

of a statute is a question of law that this court may review independently. *Local No. 695 v. LIRC,* 154 Wis. 2d at 82–83, *Nottelson v. ILHR Department,* 94 Wis. 2d 106, 116, 287 N.W.2d 763 (1980); *West Bend Education Ass'n.,* 121 Wis. 2d at 11–12. Nevertheless, an agency's construction of a statute is ordinarily entitled to deference in recognition that the agency's experience, technical competence, and specialized knowledge assist the agency in its interpretation of the statute. *See, e.g., West Bend Education Ass'n.,* 121 Wis. 2d at 12; *Nottelson,* 94 Wis. 2d at 117; *Milwaukee County v. ILHR Dept.,* 80 Wis. 2d 445, 259 N.W.2d 118 (1977). No weight, however, is given to an agency's interpretation of a statute if there is no evidence that the agency has any special expertise or experience interpreting the statute. *Local No. 695,* 154 Wis. 2d at 84. When deference is accorded to an administrative agency, the agency's conclusion of law will be sustained if it is reasonable, even if an alternative is equally reasonable. *See, e.g., West Bend Education Ass'n,* 121 Wis. 2d at 13–14; *Fitzgerald,* 35 Wis. 2d at 337; *Tecumseh Products Co. v. Wisconsin E.R. Board,* 23 Wis. 2d 118, 129, 126 N.W.2d 520 (1964). This court will uphold the agency's construction of a statute unless it is clearly contrary to the legislative intent. *A.O. Smith Corp. v. ILHR Department,* 88 Wis. 2d 262, 267, 276 N.W.2d 279 (1979); *Leissring v. DILHR,* 115 Wis. 2d 475, 481, 340 N.W.2d 533 (1983).

The Commission has "experience, technical competence, and specialized knowledge" that assist the agency in its interpretation of the statute. *See West Bend Education Ass'n.,* 121 Wis. 2d at 12. The Commission has had experience with benefit provisions relating to educational employes at least since 1953. Section 108.02(5)(f)9, Stats. (1953) (created by Section 2, Chap-

ter 483, Laws of 1953, published July 21, 1953). It has had experience in interpreting the legislation at issue since 1977. *See Leissring v. DILHR,* 115 Wis. 2d at 487. Therefore, deference to the Commission's decision is appropriate in this case.

The Commission determined that sec. 108.04(17)(a), Stats., is ambiguous. We agree because reasonably well-informed individuals could understand the word "term" found in the statute in two or more senses. *See Leissring,* 115 Wis. 2d at 483. The word "term" has no universally recognized meaning in the context of educational institutions. "Term" may signify a number of different scheduling alternatives including quarters, trimesters, and other variations on the standard two semester year, as well as the conventional "academic year." For example, the phrase "school term" is defined by sec. 115.001(12) as meaning, "the time commencing with the first school day and ending with the last school day that the schools of a school district are in operation for attendance of pupils in a school year, other than for the operation of summer classes." Because the statute is ambiguous, it was appropriate for the Commission to examine the statute to discern the manner in which the legislature intended "term" to be interpreted.

The Commission referred to publications of the United States Department of Labor for guidance in interpreting the language of sec. 108.04(17)(a), Stats. In *Leissring,* 115 Wis. 2d at 484, we recognized that the provisions of ch. 108 are substantially influenced by provisions of the Federal Unemployment Tax Act, 26 U.S.C. sec. 3301–3311, which provides substantial tax credits to employers in states that administer unemployment compensation benefits in accordance with federal

247

guidelines. Section 108.04(17)(a) was enacted in conformity with the Unemployment Compensation Amendments of 1976, Pub. L. 94–566, 90 Stat. 2667. *See Leissring,* 115 Wis. 2d at 486–87. Therefore, the publications of the United States Department of Labor, which interprets and administers the Federal Unemployment Tax Act, are relevant in interpreting the legislative intent behind sec. 108.04(17)(a).

The Commission concluded that an examination of Department of Labor publications made it evident that the word "term" is used in the statutes to address those situations where a break in employment occurs due to a break between quarters, trimesters, or other periods used by an institution in lieu of the conventional two-semester system; and also to address those situations where a break in employment occurs due to a sabbatical leave or similar interruption in regular, annual employment. The Commission cited language in the Department of Labor's publication *Draft Legislation to Implement the Employment Security Amendments of 1970 . . . H.R. 14705* at 58, in support of this view:

> Implicit in the two preceding paragraphs is a reading of the phrase in section 3304(a)(6)(A), 'a similar period between two regular but not successive terms' as intending to provide (a) for the case of sabbatical leave and (b) for institutions of higher education that do not follow the conventional 2-semester academic year. The language of the Senate Committee report, quoted earlier, is clear as to sabbatical periods. In the case of institutions operating on a 3-semester or 4-quarter basis that embrace the entire 12 months of the year, the counterpart of 'the period between two successive academic years' is achieved, as indicated above, by viewing the semester or quarter in which services are not required as being in effect the equivalent. This view implements the expressed leg-

248

islative intent described in the Senate Committee's report to meet the special situation of faculty and other professional employees of a college or university who are 'employed pursuant to an annual contract at an annual salary, but for a work period of less than 12 months.' Thus an individual who is employed under contract by a college or university for one semester or term only, in each of two years could not be considered to be under an annual contract at an annual salary.

The Department of Labor publication indicates that the word "term" used in 26 U.S.C. sec. 3304(a)(6)(A), was intended to cover customary lapses in annual employment other than the break between standard academic years under the conventional two-semester system. Disqualification "between terms" effectively prevents teachers who work in non-traditional schools with no extended break between academic years from subsidizing their off-term vacation.

We agree with the Commission that the use of "term" in sec. 108.04(17)(a), Stats., does not provide an optional method of addressing the question of reasonable assurance between two academic years. As in the federal statute, the word "term" provides a secondary alternative to "academic year" that is applicable when a non-conventional school year makes it inappropriate to consider customary breaks in employment by comparing conventional academic years.

The Commission's finding is not inconsistent with the policy behind sec. 108.04(17)(a), Stats., as discussed in *Leissring.* In *Leissring,* 115 Wis. 2d at 489, we emphasized that the intent of the limited disqualification in sec. 108.04(17)(a) is "to prevent subsidized summer

vacations for those teachers who are employed during one academic year and who are reasonably assured of resuming their employment the following year." We further noted that the teacher whose only employment prospect for the following academic year includes a substantial decrease in hours and earning capacity, "is immediately confronted with a potential need to find alternative means of economic support . . .. If the teacher wants to secure another full-time position for the next academic year, he or she must utilize the summer months for this job search, and will need economic aid for this purpose as well." *Id.* at 490. The employes in this case, like the employes in *Leissring,* face the need to seek employment for the entire upcoming academic year.

The Commission's interpretation of sec. 108.04(17)(a), Stats., to require a comparison of academic years in this case is reasonable. The Commission's construction is supported by the federal agency's interpretation of the parallel federal statute. Furthermore, the Commission's interpretation is not inconsistent with the purpose of the UC legislation.

The Department does not dispute the conclusion that if academic years are compared, both employes are eligible for UC benefits because they do not have a reasonable assurance of employment under the same terms and conditions pursuant to the standards set by this court in *Leissring* and Wisconsin Administrative Code Section ILHR 132.04(2).[1] For there to be a reasonable

[1](2) STANDARD. Except as provided under sub. (3), the terms and conditions of the employment for which the claimant receives assurance from an educational institution under s. 108.04(17)(a), (b), and (c), Stats., for the academic year or term immediately following the weeks of unemployment which

assurance of employment under the same terms and conditions, the employe must be assured of a salary of at least 80 percent of that received during the previous academic year. Emerson's salary offer for the 1988–89 academic year amounted to only 46 percent of her 1987–88 academic year pay. Schnitzius's salary offer for the 1988–89 academic year amounted to approximately 59 percent of her 1987–88 academic year pay. Because the employes were not assured of receiving more than 80 percent of their gross weekly wage in the upcoming academic year, they do not have a reasonable assurance of employment under the same terms and conditions and they are eligible for UC benefits pursuant to sec. 108.04(17)(a), Stats.

Accordingly, the decisions of the La Crosse County Circuit Courts affirming the Commission's decisions awarding unemployment compensation benefits to the employes Kathryn Schnitzius and Sally Emerson for UC weeks 24 through 35 of 1988 are affirmed.

---

occurred between academic years or terms or during an established and customary vacation period or holiday recess are reasonably similar if:

    (a)   The gross weekly wage is more than 80% of the gross weekly wage earned in the academic year or term which preceded the weeks of unemployment;

    (b)   The number of hours per week is more than 80% of the average number of hours worked per week in the academic year or term which preceded the weeks of unemployment; and

    (c)   The employment involves substantially the same skill level and knowledge as the employment in the academic year or term which preceded the weeks of unemployment.

*By the Court.*—The judgment of the circuit court in No. 89-1691 is affirmed. The judgment of the circuit court in No. 89-1852 is affirmed.