James G. WANISH, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION and Wittenberg-Birnamwood School District, Defendants-Respondents. [Case No. 90–2818.]

Carol A. SANDERFOOT, Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Appellant,†

APPLETON AREA SCHOOL DISTRICT, Defendant. [Case No. 91–0560.]

Court of Appeals

*Nos. 90–2818, 91–0560. Submitted on briefs June 10, 1991.—Decided June 25, 1991.*

(Also reported in 472 N.W.2d 596.)

†Petition to review denied.

901

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ellen J. Henningsen* and *Kathleen Heiman* of *Wisconsin Education Association Council* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Ellen J. Henningsen* of *Wisconsin Education Association Council* of Madison.

On behalf of the defendants-respondents and defendant-appellant, the cause was submitted on the briefs of *Robert C. Reed* of *Labor and Industry Review Commission* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   James Wanish and Carol Sanderfoot appeal Labor and Industry Review Commission determinations that they were not eligible for unemployment compensation during school holiday recesses because they were employed immediately preceding and following such recesses. Wanish and Sanderfoot contend that the commission erred by applying sec. 108.04(17)(c), Stats., to their circumstances, contrary to the statute's purpose. Because the statute does not deny unemployment compensation payments during customary school vacations to an employee who is otherwise eligible for those benefits, we reverse the commission's determinations.[1] Because both cases present the same issue and involve substantially the same facts, we only review

---

[1] The commission's determination was affirmed by the circuit court in *Wanish* and reversed in *Sanderfoot*.

904

Wanish's factual situation, but our conclusions and analysis apply to both cases.

Wanish was a full-time teacher for the Wittenberg-Birnamwood School District. His contract was not renewed at the end of the 1987–88 school year. He applied for and received unemployment compensation benefits based upon his previous employment as a teacher. Beginning in 1988, Wanish worked periodically as a substitute teacher. This work reduced his unemployment compensation benefits but did not disqualify him from receiving such benefits. Wanish worked as a substitute teacher during the weeks immediately preceding and following the 1988 Christmas recess. The commission determined that Wanish was ineligible to receive unemployment compensation benefits for the week of Christmas recess because of his employment as a substitute teacher for one day during both the week preceding and following the recess. The commission based its decision on sec. 108.04(17)(c), Stats., which provides:

> An employe of an educational institution or an employe of a government unit or nonprofit organization who provides services to or on behalf of an educational institution and who performs services as described in par. (a) or (b) is ineligible for benefits based on such services for any week of unemployment which occurs during an established and customary vacation period or holiday recess if such employe performed such services in the period immediately before such vacation period or holiday recess, and there is a reasonable assurance that such employe will perform such services in the period immediately following such vacation period or holiday recess.

905

The issue in this case involves the interpretation of sec. 108.04(17)(c), Stats., which we review as a question of law. *See Leissring v. DILHR,* 115 Wis. 2d 475, 481, 340 N.W.2d 533, 536 (1983). While we give weight to the interpretation given a statute by the agency charged with its application, we are not bound by that interpretation. *Nottelson v. DILHR,* 94 Wis. 2d 106, 115–17, 287 N.W.2d 763, 768 (1980). The first issue we must address is the degree of deference to be accorded the agency's interpretation. We will give "great weight" to the agency's interpretation where that interpretation "reflects a practice or position long continued, substantially uniform, and without challenge by governmental authorities and courts." *Eau Claire County v. WERC,* 122 Wis. 2d 363, 365–66, 362 N.W.2d 429, 430 (Ct. App. 1984). However, if the question is of more recent vintage, we will only give "due weight" to the agency determination. *Berns v. WERC,* 99 Wis. 2d 252, 261, 299 N.W.2d 248, 253 (1980). Because all parties agree that the issue in the instant case is one of first impression, we will only give "due weight" to the commission's determination.[2]

When a statute is clear on its face, we may not look beyond the statute to determine the intended meaning. *Leissring,* 115 Wis. 2d at 483, 340 N.W.2d at 536. We will only use extrinsic aids to determine the legislative intent if the statute is ambiguous. *Id.* A statute is ambig-

---

[2]No weight will be given to an agency interpretation when the only issue is a legal one and there is no evidence of any special agency expertise or experience. *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990). However, because neither party advances this standard as the applicable standard of review and because its application would not affect our conclusion, we decline to apply it.

uous if reasonably well-informed individuals could reasonably understand the statute in two or more senses. *Id.*

■ We conclude that the phrase "such services" renders sec. 108.04(17)(c), Stats., ambiguous. We first note that this phrase is used several times in subsecs. (a), (b) and (c), and the phrase appears to refer to different services at different points in the statute. Subsection (c) provides that "an employee . . . who performs services as described in par. (a) or (b) is ineligible for benefits based on such services . . . if such employee performed *such services* in the period immediately before such vacation . . .." (Emphasis added.) The statute is unclear as to exactly what services must be performed to render the employee ineligible for benefits. The emphasized phrase "such services" might reasonably be interpreted to refer to any educational service performed immediately before and after a customary vacation or holiday. This reading is achieved by construing "such services" to refer to "services as described in pars. (a) and (b)." Under this interpretation, Wanish's work before and after Christmas vacation disqualified him from receiving benefits during that vacation.

On the other hand, one might reasonably interpret the emphasized phrase "such services" to refer to the employment that initially qualified the employee for benefits. This construction relates the phrase "such services" to the preceding clause "based on such services," which specifically qualifies the employee's ineligibility for benefits. Under this interpretation, Wanish is not disqualified from receiving benefits during a customary vacation or holiday because his unemployment benefits were based on his previous full-time employment, rather than the services he performed immediately before and after that vacation.

The primary objective in construing a statute is to achieve a reasonable construction that will effectuate the statutory purpose. *Leissring,* 115 Wis. 2d at 483, 340 N.W.2d at 536. The purpose of the Wisconsin Unemployment Act is to "ameliorate the economic hardship and social costs of unemployment," and the disqualifying language in sec. 108.04(17), Stats., must be read with that general purpose in mind. *Leissring,* 115 Wis. 2d at 484, 340 N.W.2d at 537.

Wanish is unemployed and is therefore in the class of people the statute seeks to protect. His periodic substitute teaching reduces proportionately the amount of benefits required to ameliorate his economic hardship. When Wanish does not have substitute teaching engagements and is not being paid, as during Christmas recess, he is entitled to those benefits without reduction.

The court in *Leissring* interpreted sec. 108.04(17)(a), Stats., which deals with unemployment benefits for employees of educational institutions between academic years or terms. That subsection is virtually identical to subsec. (c), except that subsec. (a) deals with summer vacation while subsec. (c) addresses other vacations and holidays.[3] The issue in *Leissring*

---

[3]Section 108.04(17)(a) provides:

> An employe of an educational institution or an employe of a government unit or nonprofit organization who provides services to or on behalf of an educational institution and who performs services in an instructional, research or principal administrative capacity is ineligible for benefits based on such services for any week of unemployment which occurs during a period between 2 successive academic years or 2 regular terms, whether or not successive, if such employe performed such services in the first such academic year or term and if there is a contract or a reasonable assurance that such employe will perform such services in the 2nd such academic year or term.

was whether a full-time teacher who was laid off at the end of the school year was eligible for unemployment benefits over the summer, even though the teacher was offered employment as a substitute teacher with indeterminate wages and hours for the following school year. In interpreting the statute, the court determined that the legislative intent was to "prevent subsidized summer vacations for those teachers who are employed during one academic year and who are reasonably assured of resuming their employment the following year." *Id.* at 488–89, 340 N.W.2d at 539. Because the teacher's offered employment was substantially reduced in terms, benefits, and conditions compared with her employment during the preceding year, she was eligible for unemployment benefits over the summer.

Just as the clear intent of subsec. (a) is to preclude unemployment compensation benefits to regularly employed school employees during summer vacation, the intent of subsec. (c) is to preclude regularly employed school employees from receiving benefits during other customary vacations and holidays. Subsection (a) prevents subsidized summer vacations, and subsec. (c) prevents subsidized holidays. A regularly employed teacher remains employed while the school is in recess. Permitting benefits to such an employee would subsidize his paid vacation. Wanish, on the other hand, is in no sense subsidized by receiving unemployment benefits during Christmas vacation. He was unemployed before, during and after that vacation. His substitute teaching merely reduced his unemployment benefits during the weeks preceding and following the vacation but did not affect his position among the ranks of the unemployed.

The commission's interpretation of sec. 108.04(17)(c), Stats., is inconsistent with the public pur-

pose of the statute. *Leissring,* 115 Wis. 2d at 492, 340 N.W.2d at 540. It acts to discourage recipients of unemployment compensation benefits from accepting available part-time employment. This result is contrary to the purpose of the Unemployment Compensation Act. Under its interpretation, a full-time teacher who was laid off and remained unemployed would be eligible for benefits irrespective of school holidays. However, the full-time teacher who was also laid off but who did periodic substitute teaching immediately preceding and following school holidays would be disqualified from receiving benefits during such holidays, even though the teacher remained eligible for benefits during the weeks he substituted. The commission's interpretation is inconsistent with the purpose of the Act and extends the ineligibility provisions of this subparagraph far beyond their intended consequences.

*By the Court.*—Judgment in *Wanish* is reversed; judgment in *Sanderfoot* is affirmed.